UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL RONALD BROWN,

    Petitioner,

v.

BRENDAN M. LUCEY,

    Respondent.

No. 14-CV-13683-IT

**REPORT AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 (Dkt. No. 1)**

Cabell, U.S.M.J.

## I.   INTRODUCTION

Michael Ronald Brown (Brown or "the petitioner"), proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his conviction for unlawfully distributing controlled substances. He advances several arguments in support of his petition but his principal claim is that the Massachusetts Supreme Judicial Court (SJC) violated the double jeopardy clause when it affirmed his conviction for a charge Brown contends he was acquitted of by the trial judge. After careful consideration of the record in this case, and for the reasons set forth below, the court finds that the petitioner is not entitled to the relief requested and recommends that the petition be DENIED.

## II. RELEVANT FACTS

Brown, a physician, was indicted in Massachusetts Superior Court on multiple charges of violating M.G.L. c. 94C, §§ 32A(a) and 32B(a), for illegally "distributing or dispensing" Class B and Class C controlled substances.[1] In particular, Brown allegedly prescribed pain-relieving opiates to seven patients for illicit purposes. He was tried before a jury on all but two indictments, which were tried subsequently at a jury-waived trial. Both trials involved charges that Brown violated M.G.L. c. 94C, §§ 32A(a) and 32B(a) by "distributing or dispensing" controlled substances, and Brown was convicted after each trial.

For present purposes, the principal issue arising from Brown's jury trial revolved around the instructions to the jury on the "distributing or dispensing" charges. The material facts regarding both trials, summarized by the SJC, are as follows:[2]

> *a. Jury trial.* The jury trial centered on prescriptions for pain-relieving opiates, all class B controlled substances, G.L. c. 94C, § 31, written by the defendant for seven patients. Admitted in evidence at the trial was a statement the defendant had made to members of the Attorney General's Medicaid fraud control unit during the investigation, to the effect that he followed a responsible standard of care with regard to patients receiving such prescriptions. He explained

---

[1] Brown was also charged with submitting false medical claims in violation of M.G.L. c. 118E, § 40(2), committing larceny in excess of $250 in violation of M.G.L. c. 266, § 30(1) and possession of a controlled substance in violation of M.G.L. c. 94C, § 34.

[2] In habeas proceedings, "a determination of factual issues by the State court should be presumed to be correct." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends to factual findings by state appellate courts. *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002).

that his practice was to test his patients for indications of illegal substance abuse, and that he would intervene or cease prescribing pain-relieving opiates when those tests returned positive for illegal drugs.  However, in the cases of the seven patients at issue, the evidence was that the defendant did not heed his own standards and continued to prescribe opiates to the patients —sometimes in increasing dosages— despite laboratory results revealing them to be illegal drug users.  Those same laboratory results also revealed that the patients were not taking the opiates prescribed to them by the defendant.  Yet, the defendant continued to issue new prescriptions to them.  Based on this evidence, the Commonwealth produced an expert who testified that the prescriptions written by the defendant for these patients were not issued in good faith and served no legitimate medical purpose.

As noted, the indictments against the defendant that were at issue in the jury trial charged him with "distribut[ing] or dispens[ing]" controlled substances in violation of the drug statutes.  The terms "[d]istribute" and "[d]ispense" have distinct meanings defined in G.L. c. 94C, § 1, and the defendant argued at trial that his conduct could only qualify, if at all, as one or the other, but not both.  The Commonwealth agreed and proceeded on the theory that the defendant had "dispensed" controlled substances within the meaning of the drug statutes... As a result, the judge instructed the jury that they had to find beyond a reasonable doubt that the defendant "dispensed" each of the controlled substances.

In turn, the defendant contended that he could not be guilty of dispensing controlled substances unless the persons to whom they were delivered were lawfully in possession of them, pointing to the statutory definition of "dispense" and "ultimate user."  Because the evidence was notably to the contrary, the defendant made a motion for directed verdicts, which was denied, and a motion for a jury instruction to the same effect, which was also denied.

b. *Jury-waived trial.*  At the jury-waived trial on the indictment charging distributing or dispensing a class C controlled substance in violation of § 32B(a), the defendant stipulated to evidence sufficient to find

3

>him guilty of the charge, admitting that he prescribed opiates to a patient pursuant to an agreement under which the patient would fill the prescription and give some of the medication back to the defendant, and that the prescription was not written for a legitimate medical purpose….
>
>Neither the parties nor the judge addressed the fact that the indictment charged the defendant with "distribut[ing] or dispens[ing]." In finding the defendant guilty, the judge stated simply that the defendant had violated G.L. c. 94C, § 32B(*a*), without reference to which of the two forms of conduct the defendant had engaged in, and the defendant made no claim as to the adequacy of the evidence to support a conviction under either alternative.

*Commonwealth v. Brown*, 456 Mass. 708, 710-711 (2010) (internal footnotes omitted) (*Brown I*).

### III. **PRIOR PROCEEDINGS**

Brown applied for direct appellate review to the SJC, raising among other things the issue of whether he could be convicted of dispensing a controlled substance when the ultimate user of that substance was an unlawful possessor.[3] The SJC denied the application on November 29, 2007. (S.A. 118).

Brown then appealed to the Massachusetts Appeals Court. The Appeals Court affirmed the trial court's rulings (with one judge dissenting on the issue), holding that dispensing a controlled substance did not require the ultimate users to be lawful

---

[3] Pursuant to Rule 11, Mass. R. App. P., a party may seek direct SJC review in certain circumstances.

4

possessors of the substances. *Commonwealth v. Brown,* 74 Mass. App. Ct. 75, 83–84 (Mass. App. Ct. 2009).

On July 17, 2009, the SJC granted Brown's request for further appellate review. (S.A. 14). On May 11, 2010, the SJC affirmed Brown's convictions after engaging in a detailed analysis of M.G.L. c. 94C and its various sections. *Commonwealth v. Brown,* 456 Mass. 708 (2010). The SJC concluded among other things that a physician who engages in the conduct Brown engaged in may be prosecuted for either issuing an invalid prescription, in violation of section 19, or for unlawful distribution, in violation of sections 32-32H. *Brown,* 456 Mass. at 724-725. Here, because the indictment charged Brown with violating section 32 rather than section 19, the indictment, properly understood, alleged unlawful distribution.

Consequently, as the SJC noted, the trial court's jury instruction, although articulated as one for unlawful dispensing, in reality recited the elements for unlawful distribution. *Id.* at 725-726. The SJC found this revelation to be of no legal consequence, however. The SJC reasoned that Brown was not prejudiced in any way because the jury instruction the court gave matched the elements of the statute and it therefore made no difference to the jury "which verb in the indictment their attention was drawn. Considering only the elements necessary for the crime of unlawful distribution, they convicted the defendant." *Id.* at 726. As to the conviction on the indictment

charging "distribute or dispense" rendered in the jury-waived trial, the SJC found no error and affirmed that conviction. *Id.* Brown filed a Petition for Rehearing to the SJC but the SJC denied it, on June 30, 2010.

On June 29, 2011, Brown filed his first habeas petition in this court. The petition set forth six separate grounds for relief, including among them the claims raised in the present petition, but the court dismissed it for failure to exhaust state court remedies. *Id.*

Consequently, on March 19, 2012, Brown moved in the superior court for release from unlawful restraint pursuant to Mass. R. Crim. P. 30(a). (S.A. 39). On March 21, 2012, the superior court denied the motion without a hearing. (Id.). Brown appealed to the Appeals Court and the appeal was subsequently transferred from the Appeals Court to the SJC *sua sponte,* on April 26, 2012. (S.A. 57-58). On September 25, 2013, the SJC affirmed the order denying the petitioner's Rule 30 motion, and found that its prior decision in *Brown I* did not violate the petitioner's constitutional rights. *Commonwealth v. Brown*, 466 Mass. 1007, 1010 (2013) (*Brown II*).

**IV. <u>THE PETITIONER'S HABEAS CLAIMS</u>**

On September 22, 2014, the petitioner filed the instant petition, presenting the following four issues, framed as questions:

1. When a judge instructs a jury that the charge of Distribution is surplusage, and is of no concern to your deliberation, with explicit approval of the Prosecution, does this amount to an acquittal of the charge of Distribution, after the jury reaches a verdict on the alternative charge Dispensing, and is discharge [sic] from their duty?

Re-paraphrasing, the Court reads this question to contend that the trial court acquitted the petitioner of the charge of unlawful distribution, and the SJC therefore violated the Fifth Amendment's double jeopardy clause when it subsequently affirmed the petitioner's conviction on that ground.

2. Can the Massachusetts Supreme Judicial Court resurrect a charge that has been removed from an indictment, with the explicit approval of the Commonwealth and never contested by the Commonwealth without violating the defendant's right to a fair and meaningful appeal?

The Court interprets this question to allege that, because the petitioner had no reason at the time of trial to believe that his conviction was one for unlawful distribution, the SJC's subsequent affirmance on that ground was unexpected and effectively deprived him of the right to appeal the conviction.

3. Does the imposition of the Distribution conviction along with the conviction of Possession (guilty filed) amounts [sic] to multiple punishments for the same crime, in that possession is a lesser included crime of distribution.

The Court interprets this question to argue that the petitioner cannot be punished for unlawful drug possession because possession

is a lesser offense included within the crime of unlawful distribution.

> 4. Are ambiguous criminal statutes to be construed in favor of the defendant?

The Court interprets this question to allege a violation of the Ex Post Facto Clause of the Constitution.

## V. STANDARD OF REVIEW

Under the "Antiterrorism and Effective Death Penalty Act of 1996" ("AEDPA"), a federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Woodford v. Visciotti*, 537 U.S. 19, 24–26 (2002); *Early v. Packer*, 537 U.S. 3, 8 (2002); *Williams v. Taylor*, 529 U.S. 362, 405–09 (2000).

"Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision on the merits. *Greene v. Fisher*, 565 U.S. 34, 39 (2011); *Lockyer v. Andrade*, 538

U.S. 63, 71-72 (2003). "[C]learly established law signifies the holdings, as opposed to the dicta, of [the United States Supreme] Court's decision." *Howes v. Fields*, 565 U.S. 499, 505 (2012) (*quoting Williams v. Taylor*, 529 U.S. at 412; internal quotations omitted).

A state court's decision is "contrary to" clearly established federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts ... materially indistinguishable" from a decision of the Supreme Court but reaches a different result. *See Early v. Packer*, 537 U.S. at 8 (citation omitted); *Williams v. Taylor*, 529 U.S. at 405-06. A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. at 407 (citation omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "The state court's application must have been 'objectively unreasonable.'" *Id*. at 520-521; *see also Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Davis v. Woodford*, 384 F.3d 628, 637-638 (9th Cir. 2004), *cert*.

*dism'd*, 545 U.S. 1165 (2005). "Under § 2254(d), a habeas court must determine what arguments or theories supported, ... or could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is "the only question that matters under § 2254(d)(1)." *Id.* Habeas relief may not issue unless "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the United States Supreme Court's] precedents." *Id.* at 102-103 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013).

**VI. DISCUSSION**

**Claim One:  Double Jeopardy Clause Violation**

Brown contends that he was acquitted of the charge of unlawful distribution when the judge instructed the jury to ignore distribution and consider only dispensing, and the SJC therefore

10

violated the Fifth Amendment's double jeopardy clause when it affirmed his conviction for distribution. The double jeopardy clause guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause extends to state prosecutions through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794 (1969). The double jeopardy clause "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of BMC v. Lydon*, 466 U.S. 294, 306-07 (1984). Brown invokes the first of these principles here.

The petitioner is not entitled to habeas relief on this claim because there is no clearly established Supreme Court precedent holding that an instruction to a jury to ignore a particular theory of liability *per se* amounts to an acquittal of the offense on that basis. Brown suggests without quite explicitly arguing that the Supreme Court addressed this issue in *Price v. Vincent*, 538 U.S. 634 (2003), but he is wrong. As Brown notes, the Supreme Court in *Price* did state that "an instruction to the jury that a charge or element of the charge has been dismissed by the Judge" might support a finding of acquittal, but he takes that statement out of context. *Price v. Vincent*, 538 U.S. at 642. In context, the Supreme Court was merely recounting statements Michigan's Supreme

Court had made below when it addressed the issue, but the Supreme Court itself did not address the issue. Moreover, *Price* hardly advances the petitioner's cause; the Supreme Court ultimately held that there was no basis to disturb the state supreme court's ruling that the trial judge's comments that the evidence "at the very best" supported only second degree murder were simply not sufficiently final to constitute an acquittal of the first degree murder charge. *Price,* 538 U.S. at 637–643.

No party has offered any other controlling precedent on this issue, presumably because there is none, and this court also has not been able to identify any controlling Supreme Court precedent directly on point. Accordingly, Brown's claim fails. *See Carey v. Musladin,* 549 U.S. 70, 77 (2006) (holding that habeas relief was not available where there were no Supreme Court holdings to support petitioner's claim).

**Claim Two: The SJC's "Resurrection" of Acquitted Conduct**

Brown contends that, assuming the trial court acquitted him of the charge of unlawful distribution by virtue of its jury instruction, the SJC unlawfully "resurrected" the charge when it affirmed his conviction, and thus effectively deprived him of the right to appeal his conviction for unlawful distribution.

To the extent this argument rests on the premise that the trial court never instructed the jury on a theory of unlawful distribution, this court agrees with the SJC that the trial court

12

did in fact so instruct the jury, and the argument therefore fails for the reasons noted above. More fundamentally, the claim fails because Brown has no federal constitutional right to appeal a state court conviction. *United States v. MacCollum*, 426 U.S. 317, 323 (1976) ("The Due Process Clause of the Fifth Amendment does not establish any right to an appeal"); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) ("a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all"). Rather, Brown's appellate rights are creations of state law, and errors of state law do not provide a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, there is no basis for habeas relief on this ground.

### Claim Three: Multiple Punishments

Brown argues that his convictions for both unlawful drug distribution and unlawful drug possession "amount[] to multiple punishments for the same crime" because unlawful possession is a lesser crime included within the offense of unlawful distribution. The SJC summarily dismissed this argument in *Brown II*. After dealing with other claims the petitioner had raised there, the SJC noted that Brown's conviction for possession was simply placed "on file," and it observed that Brown had never raised any issue relating to this claim in his direct appeal. *Brown II* at 1009

13

n.2. In declining to consider the issue further, it is apparent to this court that the SJC considered Brown's claim to be procedurally defaulted.

The SJC's treatment of this claim effectively disposes of the argument on habeas review because this court cannot review state court decisions that rest on adequate and independent state law grounds, and a state court conclusion that a claim has been procedurally defaulted is one such adequate and independent state-law ground. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Lucien v. Spencer,* No. 07-11338-MLW, 2015 WL 5824726, at *22 (D. Mass. September 30, 2015) (federal court did not have authority to review claim where SJC found it had been procedurally defaulted for failure to have been raised on appeal; SJC's finding was an independent and adequate state ground); *Lykus v. Commonwealth*, 432 Mass. 160, 163 (2000) (a defendant who fails to bring his claim to the attention of the reviewing court at the earliest possible time waives that claim).

In cases where the adequate-and-independent-ground rule applies, "federal habeas review of the claim[] is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The petitioner has not explained his failure to raise this claim

on direct appeal and therefore has not established cause and prejudice. The petitioner also has not shown that he has suffered a miscarriage of justice, which "is a narrow exception to the cause-and-prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." *Burks v. Dubois*, 55 F.3d 712, 717 (1st Cir. 1995). The petitioner has not argued that he is actually innocent and the fact that the evidence against the petitioner at trial was strong suggests that an actual innocence claim would be unlikely to succeed.

Moreover, because Brown's conviction for possession was simply placed "on file" pursuant to Massachusetts state court practice, no sentence was imposed, and the conviction therefore did not for habeas purposes become a state law judgment pursuant to which the petitioner is in custody. *See Seales v. Thompson*, Civil No. 13-11483-LTS, 2015 WL 3795799, at *9 (D. Mass. June 18, 2015); 28 U.S.C. § 2254(a) (permitting federal courts to "entertain an application for a writ of habeas corpus in behalf of a person *in custody pursuant to the judgment of a State court. . .*") (emphasis added). Accordingly, the claim fails on that ground as well.

### Claim Four: Ex Post Facto Violation

Finally, Brown appears to argue that the statute he was convicted of violating is ambiguous in terms of what conduct it criminalizes, and thus violates the Ex Post Facto Clause of the

15

U.S. Constitution. The Ex Post Facto Clause was designed to ensure that individuals have fair warning of the applicable laws. *Peugh v. U.S.*, 133 S.Ct. 2072, 2085 (2013). To violate the Clause, a law must be retrospective and must "alter[] the definition of criminal conduct or increas[e] the punishment for [a] crime" after it has been committed. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). A judicial enlargement of a statute, on the other hand, violates ex post facto principles only if the court's interpretation of the statute is "unexpected and indefensible." *See Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964). Presumably, Brown would contend that the SJC judicially enlarged the statute when it affirmed his conviction for unlawful distribution.

Brown is not entitled to relief on this claim because the SJC's interpretation of M.G.L. c. 94C was neither unexpected nor indefensible. The statute unquestionably covers the conduct Brown engaged in. More particularly, the statute makes it a crime for "[a]ny person [to] knowingly or intentionally . . . distribute[]. . . . a controlled substance" for an illicit purpose. M.G.L. 94C §§ 32A & 32B. The facts at trial were sufficient to show that Brown knowingly and intentionally prescribed opiates to individuals who either tested positive for illegal drugs or who tested negative because they were not taking the opiates previously prescribed. The statute clearly encompasses such conduct. The SJC did not reinterpret the statute in a way such that the petitioner did not

16

have fair warning of the charges against him.  Rather, all the SJC did was to clarify that what Brown did amounted to distribution rather than dispensing.  The SJC did not make conduct criminal that otherwise, on a plain reading of the statute, would not have been understood to be criminal.  *Bouie*, 415 F.3d at 355.  As such, habeas relief is not warranted.

## VII. CONCLUSION

For the reasons stated above, I respectfully recommend that the petitioner's habeas corpus petition be DENIED.  The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See *Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v.*

17

*Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: August 28, 2017